# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin

In the Matter of the Search of:

IN THE MATTER OF THE SEARCH OF
INFORMATION ASSOCIATED WITH FACEBOOK
USER IDs #100009229086389 (GRIER) AND
#100013113126084 (SPENCER) THAT IS STORED AT
PREMISES CONTROLLED BY FACEBOOK INC.

)
)
)
)
)
)

Case No. **19-931 M(NJ)**

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property:

See Attachment A.

located in the Eastern District of Wisconsin, there is now concealed:

See Attachment B.

The basis for the search under Fed. R. Crim P. 41(c) is:

☒ evidence of a crime;

☒ contraband, fruits of crime, or other items illegally possessed;

☒ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to violations of:

The application is based on these facts: See attached affidavit.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested
under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Special Agent Frank Rutter, ATF
*Printed Name and Title*

Sworn to before me and signed in my presence:

Date: October 11, 2019

_____
*Judge's signature*

City and State: Milwaukee, Wisconsin

HONORABLE NANCY JOSEPH, U.S. Magistrate Judge
*Printed Name and Title*

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Frank Rutter, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant for information associated with a certain Facebook user ID that is stored at premises owned, maintained, controlled, or operated by Facebook, a social networking company headquartered in Menlo Park, California. The information to be searched is described in the following paragraphs and in Attachment A1 and A2. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Facebook to disclose to the government records and other information in its possession, pertaining to the subscriber or customer associated with the user IDs. The search will be for evidence and instrumentalities associated with violations of 922(g) (felon in possession of a firearm).

2. I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), and have been since 2015. As an ATF Agent, I have participated in numerous investigations involving violations of 21 U.S.C. §§ 841(a)(1) and 846 (conspiracy to possess with the intent to distribute and distributing a controlled substance). I have also conducted firearm investigations involving violations of 18 U.S.C. § 922(a)(6), commonly referred to as "lying and buying" as well as investigations related to the unlawful use of firearms and firearms trafficking. I have had a variety of formal, informal, and on the job training in the investigation of illegal firearms .

possession and trafficking in controlled substances; I have participated in the execution of search warrants in which firearms and controlled substances were seized; and I am familiar with the street name(s) of firearms, controlled substances and respective related topics.

3. During the course of my career, I have conducted criminal investigations involving the use of social media. Additionally, I have received training and instruction regarding the use of social media sites by criminal elements. I have conducted previous criminal investigations in which internet research that I conducted yielded the use of social media by suspects. Specifically, I know from my training and experience that alleged suspects of criminal activity, who have accounts on social media websites, will often communicate their criminal intentions or past activity via "instant message" or "in-box message" on a given social media website. The "instant message" / "in-box message" is a private communication from one user to another. Furthermore, I know through experience that many social media users often use social media websites as their primary means to communicate with others. Additionally, I know from training and experience that suspects who use social media websites sometimes post photographs of themselves possessing incriminating items, such as narcotics and firearms. Also, suspects in criminal investigations have been known to post statements on social websites referencing their own criminal activity.

4. Additionally, I have conducted and participated in investigations in which information obtained from ATF's National Integrated Ballistics Information Network (NIBIN) program has aided investigative efforts. The NIBIN program

automates ballistics evaluations and provides actionable investigative leads in a timely manner. To use NIBIN, firearms examiners or technicians enter cartridge casing evidence into the Integrated Ballistic Identification System. These images are correlated against the database. Law enforcement can search against evidence from their jurisdiction, neighboring ones, and others across the country. NIBIN is the only interstate automated ballistic imaging network in operation in the United States and is available to most major population centers in the United States.

5.    The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other investigators and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

6.    Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that Adante B. Grier (1993) and Robert M. Spencer (1982) have in their possession evidence of crimes committed in violation of Title 18 U.S.C. 922 (g)(1) (felon in possession of a firearm). There is also probable cause to search the information described in Attachment A1 and A2 for evidence of these crimes, as described in Attachment B1 and B2.

## PROBABLE CAUSE

7.    On September 12, 2017, Milwaukee Police Department (MPD) Squad 7467 observed a red Infiniti sport utility vehicle traveling east on W. Capitol Drive in Milwaukee, Wisconsin, which is located in the Eastern District of Wisconsin. The

vehicle was operating without registration. The MPD squad activated their emergency lights, initiated a traffic stop and subsequently encountered four (4) occupants, Trayshaun D. Wallace (1991), Lamon D. Davis (1988), Sandra F. Fitzgerald (1994) and Deborah J. Williams (1992). While initiating the traffic stop, officers observed the rear passenger-side passenger, Fitzgerald, make exaggerated movements into the trunk compartment of the vehicle. Officers believed Fitzgerald was attempting to conceal something in the trunk of the vehicle through a rear seat access port. Upon officers initial approach to the vehicle, they observed multiple clear plastic sandwich bags throughout the front compartment of the vehicle and a digital scale in the center console. After the driver, Wallace, and the front passenger, Davis, were removed from the vehicle, officers observed Fitzgerald lean towards the front passenger seat and grab a clear plastic bag which held additional smaller clear plastic bags inside.

8.    Officers subsequently conducted a search of the vehicle and located 21.3 grams of heroin, 8.29 grams of cocaine, 1.02 grams of methamphetamines, 1.57 grams of marijuana, approximately $2,161.00 in United States currency, and a Smith & Wesson MP40 Compact handgun bearing serial number DVE2662. It should be noted the handgun was located inside the trunk of the vehicle and found with a round of ammunition chambered and a loaded magazine inserted.

9.    Additionally, officers located five (5) cellphones in the front area of the vehicle, further described as: Gray Samsung smartphone bearing serial number A3LSMJ327P (MPD Item 2), Gray Samsung cellular phone bearing serial number 707VTKE088197 (MPD Item 3), Gray LG cellular phone bearing serial number

707VTKE413229 (MPD Item 4), Black Kyocera flip cellular phone bearing serial number V65E4520 (MPD Item 5) and a Gray Samsung smartphone bearing serial number A3LSCHU680 (MPD Item 6).

10.     Affiant is aware that plastic corner cut bags containing narcotics, large quantities of United States currency, and multiple cellphones is consistent with street-level narcotics distribution.

11.     Affiant is aware that those engaged in the illegal sale and distribution of narcotics commonly possess firearms as a means to protect their narcotics and proceeds thereof.

12.     Affiant is aware Wallace is a previously convicted felon under Milwaukee County case 2012CF000632 – Possession of THC (2nd+ Offense). Affiant is aware Davis is a previously convicted felon under Milwaukee County case 2010CF000761 – Felon in Possession of a Firearm and 1st Degree Recklessly Endangering Safety. Additionally, Affiant knows that as a result of the above felony convictions, Wallace and Davis are prohibited from possessing firearms and they should be aware of that prohibition.

13.     Affiant's investigation revealed that on November 23, 2016, Christopher Carter (1985) purchased the Smith & Wesson MP40 Compact handgun bearing serial number DVE2662 (recovered in the incident described above on September 12, 2017). Affiant further discovered an additional five (5) firearms that were purchased by Carter between 2010 and 2018 were recovered by law enforcement investigating criminal activity. Carter is a not a licensed firearms dealer.

14. On August 15, 2019, Affiant reviewed various ATF Form 4473s which documented firearms purchased by Carter. ATF Form 4473 is a firearm purchase record required by federal law to be completed when a Federal Firearm Licensee (FFL) sells/transfers a firearm to anyone other than another FFL. This document must be completed by the purchaser in the presence of the FFL from whom they are purchasing the firearm. This document contains a wealth of information including, but not limited to, the purchaser's name, address, and a signed statement affirming they understand that the repetitive purchase of firearms for the purpose of resale for livelihood and profit without a Federal firearms license is a violation of Federal law. Additionally, this document requires the purchaser to attest they are the actual purchaser of the firearm and are not acquiring the firearm on behalf of someone else. Affiant is aware Carter purchased at least thirty three (33) firearms between December 13, 2010 and August 16, 2019. Many of these firearms were of the same make and model, which is not indicative of someone purchasing firearms for their private collection. Additionally, the firearms purchased were new, low cost models not considered to be antique or collectible firearms. For example, on the below dates, Carter purchased Ruger model P95 pistols which Affiant is aware are low cost models and are not considered to be collectible.

15. Affiant is aware that evidence of street-level narcotics distribution and illegal firearm purchase, possession, and/or sales is commonly found within cellphones. Affiant is aware that narcotics traffickers often take, or cause to be taken, photographs, video, and other visual depictions of themselves, their associates, firearms straw purchasers, their property, and their narcotics, and typically keep and maintain

these photographs, video, and other visual depictions in cellphones located on their person or in areas where they have exercised dominion and control.

16.     Affiant knows that subjects involved in crimes with other subjects often need to use the cellphones to coordinate the crime. Affiant knows that subjects who trafficked narcotics and illegally possess firearms often use their cellphones to take pictures of the narcotics and firearms and also to take pictures of themselves with the narcotics and firearms. Affiant is aware those who are prohibited from legally purchasing/possessing firearms must obtain firearms through other means, often times through a straw purchaser. A straw purchase can be described as the event where someone who can legally purchase/possess a firearm purchases a firearm on behalf of someone else. This is done in an effort to conceal the true identity of the intended recipient. Affiant is aware this is a commonly utilized technique by those previously convicted of felonies who seek to obtain firearms.

17.     On August 27, 2019, Affiant applied for, and obtained a Federal search warrant for the aforementioned five (5) cellular devices. The search warrant was authorized by the Honorable Nancy Joseph, a Federal Magistrate Judge for United States District Court for the Eastern District of Wisconsin. During subsequent review of the extracted digital data, specifically from the gray Samsung smartphone (MPD Item 03), Affiant found evidence related to federal firearms violations.

18.     During review of the data from the gray Samsung smartphone (MPD Item 3), Affiant observed multiple images of what appeared to be firearms and a video of Wallace pointing what appeared to be a "Tec 9" style pistol. Below is Wallace in a

screenshot of the video. The video had a date/time stamp suggesting it was created on 8/28/17 at approximately 1732 hours.



19. During review of text messages, Affiant located a July 25, 2017 message suspected to be sent by Wallace to telephone number 414-242-1691. In that message Wallace contacted his contact "Hitcar." The text message explained that Wallace had just purchased a .40 caliber Smith & Wesson for three hundred fifty dollars ($350.00). Affiant is aware this message was sent approximately forty-nine (49) days prior to Wallace being arrested by MPD during the recovery of narcotics and a .40 caliber Smith & Wesson pistol bearing serial number DVE2662.

20. Affiant reviewed user account information located within the same gray Samsung smartphone. Affiant found multiple user accounts for various email and social media platforms. Within the gray Samsung smartphone, Affiant located account information for the following services: Email: trayshaunwallace8@gmail.com and twallace@outlook.com; Instagram username: wrightst_trayday; and Facebook profile: "TrayOff Wright" - ID # 100013190072755."

21.     Affiant located a Wisconsin Department of Transportation (DOT) driver's license image (dated 6/13/17) of Wallace and compared it to the publicly viewable images on the aforementioned Facebook profile page "TrayOff Wright" - ID # 100013190072755." The images appeared consistent and to represent the same individual.

22.     During further review of the publicly viewable portion of the Facebook page "TrayOff Wright" - ID # 100013190072755," Affiant located other publicly viewable images of Wallace possessing what appeared to be firearms – these images are below. Affiant believes that there is probable cause that Wallace's Facebook account contains further evidence of federal offenses related to firearm violations.



23.     On September 16, 2019, affiant applied for, and obtained a Federal search warrant for the Facebook page belonging to Wallace (User ID 100013190072755). The search warrant was authorized by the Honorable William Duffin, a Federal Magistrate Judge for United States District Court for the Eastern District of Wisconsin. During subsequent review of the digital evidence, affiant located conversations related to firearms and firearms sales.

24. Beginning in December 2016, Wallace's Facebook (User ID 100013190072755) exchanged messages with Facebook vanity name "MrDumbo Pockets" (Facebook user ID 100009229086389). During these exchanges, "MrDumbo Pockets" provided his telephone number as 414-509-4300 and his address as 5155 N. 84th Street.

25. Affiant queried databases commonly utilized by law enforcement and found telephone number 414-509-4300 to be associated with "Adante Grier" at 5155 N. 84th Street, Apartment 3, Milwaukee, Wisconsin.

26. Affiant located a Wisconsin Department of Transportation (DOT) driver's license image (dated 7/15/19) of Adante B. Grier (1993) and compared it to the publicly viewable images on the aforementioned Facebook profile page (User ID 100009229086389). The images appeared consistent and to represent the same individual.

27. Affiant is aware Wallace and Grier Facebook pages exchanged messages discussing the sale of firearms. Affiant is aware on March 1, 2017, at 1423 hours, Grier offered to trade Wallace a Mossberg shotgun for a handgun. It should be noted Grier subsequently sent Wallace an image of what appeared to be two (2) shotguns when discussing the trade again on a later date.



28.     Affiant is aware on July 5, 2017, at 1320 hours, Wallace offered to buy a snub-nosed .357 caliber firearm with a laser from Grier. Affiant is aware Grier subsequently sent an image of two (2) revolvers to Wallace.



29.     Affiant is aware Grier is a previously convicted felon under Milwaukee County cases 2011CF005449 (Adjudged Delinquent Possess Firearm), Additionally, affiant knows that as a result of the above felony conviction, Grier is prohibited from possessing firearms and should be aware of that prohibition.

30.     Beginning in March 2017, Wallace's Facebook (User ID 100013190072755) began exchanging messages with with Facebook vanity name "Maseo Spencer" (Facebook user ID 100013113126084) about fireams and firearms sales.

31.     Affiant located a Wisconsin Department of Transportation (DOT) driver's license image (dated 3/12/18) of Robert M. Spencer (1982) and compared it to the publicly viewable images on the aforementioned Facebook profile page (User ID 100013113126084).The images appeared consistent and to represent the same individual.

32.     On March 1, 2017, Wallace and Spencer's Facebook pages exchanged messages about firearms and fireams sales. Spencer explained he had firearms which

would soon be avbailable for sale at low costs. Spencer offered to sell a revolver to Wallace for two hundred seventy five dollars ($275.00) and sent an image.



33.    On October 22, 2017, Spencer offered to sell Wallace a 9mm firearm for four hundred seventy five dollars ($475.00) and provided an image. Spencer went on to explain the firearm could also be traded in exchange for a smaller firearm and an undecided amount of United States currency.



34.    On December 4, 2017, Spencer offered to sell Wallace a "Carbine 995" and provided the following image. Spencer explained the firearm had a thirty two (32) round magazine.



35.    Affiant is aware Spencer is a previously convicted felon under Milwaukee County case 2012CF002692 (Resist Officer - Substantial Bodily Harm/Soft Tissue

Injury). Additionally, affiant knows that as a result of the above felony conviction, Spencer is prohibited from possessing firearms and should be aware of that prohibition.

36.     Affiant is aware Spencer is currently charged under Milwauke County case 2019CF003268 (felon in possession of a firearm).

## FACEBOOK INFORMATION GENERALLY

37.     Facebook owns and operates a free-access social networking website of the same name that can be accessed at http://www.facebook.com. Facebook allows its users to establish accounts with Facebook, and users can then use their accounts to share written news, photographs, videos, and other information with other Facebook users, and sometimes with the general public.

38.     Facebook asks users to provide basic contact and personal identifying information to Facebook, either during the registration process or thereafter. This information may include the user's full name, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers (for password retrieval), physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers. Facebook also assigns a user identification number to each account.

39.     Facebook users may join one or more groups or networks to connect and interact with other users who are members of the same group or network. Facebook assigns a group identification number to each group. A Facebook user can also connect directly with individual Facebook users by sending each user a "Friend Request." If the recipient of a "Friend Request" accepts the request, then the two users will become

"Friends" for purposes of Facebook and can exchange communications or view information about each other. Each Facebook user's account includes a list of that user's "Friends" and a "News Feed," which highlights information about the user's "Friends," such as profile changes, upcoming events, and birthdays.

40. Facebook users can select different levels of privacy for the communications and information associated with their Facebook accounts. By adjusting these privacy settings, a Facebook user can make information available only to himself or herself, to particular Facebook users, or to anyone with access to the Internet, including people who are not Facebook users. A Facebook user can also create "lists" of Facebook friends to facilitate the application of these privacy settings. Facebook accounts also include other account settings that users can adjust to control, for example, the types of notifications they receive from Facebook.

41. Facebook users can create profiles that include photographs, lists of personal interests, and other information. Facebook users can also post "status" updates about their whereabouts and actions, as well as links to videos, photographs, articles, and other items available elsewhere on the Internet. Facebook users can also post information about upcoming "events," such as social occasions, by listing the event's time, location, host, and guest list. In addition, Facebook users can "check in" to particular locations or add their geographic locations to their Facebook posts, thereby revealing their geographic locations at particular dates and times. A particular user's profile page also includes a "Wall," which is a space where the user and his or her "Friends" can post messages, attachments, and links that will typically be visible to

anyone who can view the user's profile.

42.     Facebook allows users to upload photos and videos, which may include any metadata such as location that the user transmitted when s/he uploaded the photo or video. It also provides users the ability to "tag" (i.e., label) other Facebook users in a photo or video. When a user is tagged in a photo or video, he or she receives a notification of the tag and a link to see the photo or video. For Facebook's purposes, the photos and videos associated with a user's account will include all photos and videos uploaded by that user that have not been deleted, as well as all photos and videos uploaded by any user that have that user tagged in them.

43.     Facebook users can exchange private messages on Facebook with other users. These messages, which are similar to e-mail messages, are sent to the recipient's "Inbox" on Facebook, which also stores copies of messages sent by the recipient, as well as other information. Facebook users can also post comments on the Facebook profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile. In addition, Facebook has a Chat feature that allows users to send and receive instant messages through Facebook. These chat communications are stored in the chat history for the account. Facebook also has a Video Calling feature, and although Facebook does not record the calls themselves, it does keep records of the date of each call.

44.     If a Facebook user does not want to interact with another user on Facebook, the first user can "block" the second user from seeing his or her account.

45.     Facebook has a "like" feature that allows users to give positive feedback

or connect to particular pages. Facebook users can "like" Facebook posts or updates, as well as webpages or content on third-party (*i.e.*, non-Facebook) websites. Facebook users can also become "fans" of particular Facebook pages.

46.     Facebook has a search function that enables its users to search Facebook for keywords, usernames, or pages, among other things.

47.     Each Facebook account has an activity log, which is a list of the user's posts and other Facebook activities from the inception of the account to the present. The activity log includes stories and photos that the user has been tagged in, as well as connections made through the account, such as "liking" a Facebook page or adding someone as a friend. The activity log is visible to the user but cannot be viewed by people who visit the user's Facebook page.

48.     Facebook Notes is a blogging feature available to Facebook users, and it enables users to write and post notes or personal web logs ("blogs"), or to import their blogs from other services, such as Xanga, LiveJournal, and Blogger.

49.     The Facebook Gifts feature allows users to send virtual "gifts" to their friends that appear as icons on the recipient's profile page. Gifts cost money to purchase, and a personalized message can be attached to each gift. Facebook users can also send each other "pokes," which are free and simply result in a notification to the recipient that he or she has been "poked" by the sender.

50.     Facebook also has a Marketplace feature, which allows users to post free classified ads. Users can post items for sale, housing, jobs, and other items on the Marketplace.

51.     In addition to the applications described above, Facebook also provides its users with access to thousands of other applications ("apps") on the Facebook platform. When a Facebook user accesses or uses one of these applications, an update about that the user's access or use of that application may appear on the user's profile page.

52.     Some Facebook pages are affiliated with groups of users, rather than one individual user.     Membership in the group is monitored and regulated by the administrator or head of the group, who can invite new members and reject or accept requests by users to enter.  Facebook can identify all users who are currently registered to a particular group and can identify the administrator and/or creator of the group. Facebook uses the term "Group Contact Info" to describe the contact information for the group's creator and/or administrator, as well as a PDF of the current status of the group profile page.

53.     Facebook uses the term "Neoprint" to describe an expanded view of a given user profile.  The "Neoprint" for a given user can include the following information from the user's profile:     profile contact information; News Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications.

54.     Facebook also retains Internet Protocol ("IP") logs for a given user ID or IP

address. These logs may contain information about the actions taken by the user ID or IP address on Facebook, including information about the type of action, the date and time of the action, and the user ID and IP address associated with the action. For example, if a user views a Facebook profile, that user's IP log would reflect the fact that the user viewed the profile, and would show when and from what IP address the user did so.

55. Social networking providers like Facebook typically retain additional information about their users' accounts, such as information about the length of service (including start date), the types of service utilized, and the means and source of any payments associated with the service (including any credit card or bank account number). In some cases, Facebook users may communicate directly with Facebook about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users. Social networking providers like Facebook typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

56. As explained herein, information stored in connection with a Facebook account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, a Facebook user's "Neoprint," IP log, stored electronic communications, and other data retained by Facebook, can indicate who has used or

controlled the Facebook account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, profile contact information, private messaging logs, status updates, and tagged photos (and the data associated with the foregoing, such as date and time) may be evidence of who used or controlled the Facebook account at a relevant time. Further, Facebook account activity can show how and when the account was accessed or used. For example, as described herein, Facebook logs the Internet Protocol (IP) addresses from which users access their accounts along with the time and date. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and use relating to the crime under investigation. Such information allows investigators to understand the geographic and chronological context of Facebook access, use, and events relating to the crime under investigation. Additionally, Facebook builds geo-location into some of its services. Geo-location allows, for example, users to "tag" their location in posts and Facebook "friends" to locate each other. This geographic and timeline information may tend to either inculpate or exculpate the Facebook account owner. Last, Facebook account activity may provide relevant insight into the Facebook account owner's state of mind as it relates to the offense under investigation. For example, information on the Facebook account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g.; deleting account information in an effort to conceal evidence from law enforcement).

57.     Therefore, the computers of Facebook are likely to contain all the material described above, including stored electronic communications and information concerning subscribers and their use of Facebook, such as account access information, transaction information, and other account information.

## TECHNICAL TERMS

58.     Based on my training and experience, I use the following technical terms to convey the following meanings:

59.     IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

60.     Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

## REQUEST FOR SEALING

61.     I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed. These documents

discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may give targets an opportunity to flee/continue flight from prosecution, destroy or tamper with evidence, change patterns of behavior, notify confederates, or otherwise seriously jeopardize the investigation.

## ATTACHMENT A1
### Property to Be Searched

This warrant applies to information between December 1, 2016 and Present Date, associated with the Facebook user ID "MrDumbo Pockets" - ID # 100009229086389" that is stored at premises owned, maintained, controlled, or operated by Facebook, a company headquartered in Menlo Park, California.

## ATTACHMENT A2
## Property to Be Searched

This warrant also applies to information between March 1, 2017 and Present Date, associated with the Facebook user ID "Maseo Spencer" - ID # 100013113126084" that is stored at premises owned, maintained, controlled, or operated by Facebook, a company headquartered in Menlo Park, California.

## ATTACHMENT B1
## Particular Things to be Seized

**I.    Information to be disclosed by Facebook**

To the extent that the information described in Attachment A1 is within the possession, custody, or control of Facebook, including any messages, records, files, logs, or information that have been deleted but are still available to Facebook, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Facebook is required to disclose the following information to the government for each user ID listed in Attachment A1:

a.    All contact and personal identifying information, including**:** full name, user identification number, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.

b.    All activity logs for the account and all other documents showing the user's posts and other Facebook activities;

c.    All photos uploaded by that user ID and all photos uploaded by any user that have that user tagged in them;

d.    All profile information; News Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the

groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications;

e. All other records of communications and messages made or received by the user, including all private messages, chat history, video calling history, and pending "Friend" requests;

f. All "check ins" and other location information;

g. All IP logs, including all records of the IP addresses that logged into the account;

h. All records of the account's usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked";

i. All information about the Facebook pages that the account is or was a "fan" of;

j. All past and present lists of friends created by the account;

k. All records of Facebook searches performed by the account;

l. All information about the user's access and use of Facebook Marketplace;

m. The types of service utilized by the user;

n. The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

o. All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the account;

p. All records pertaining to communications between Facebook and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken.

## II. Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of 922(g) (felon in possession of a firearm), since January 1, 2016 for each user ID identified on Attachment A1, information pertaining to the following matters:

(a) The relevant offense conduct, any preparatory steps taken in furtherance of the scheme, communications between Adante Grier and others related to the relevant offense conduct;

(b) Evidence indicating how and when the Facebook account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and to the Facebook account owner;

(c) Evidence indicating the Facebook account owner's state of mind as it relates to the crime under investigation;

(d) The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).

The identity of the person(s) who communicated with the user ID about matters relating to relevant offense conduct of the crime under investigation, including records that help reveal their whereabouts.

## ATTACHMENT B2
## Particular Things to be Seized

### I. Information to be disclosed by Facebook

To the extent that the information described in Attachment A2 is within the possession, custody, or control of Facebook, including any messages, records, files, logs, or information that have been deleted but are still available to Facebook, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Facebook is required to disclose the following information to the government for each user ID listed in Attachment A2:

a. All contact and personal identifying information, including: full name, user identification number, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.

b. All activity logs for the account and all other documents showing the user's posts and other Facebook activities;

c. All photos uploaded by that user ID and all photos uploaded by any user that have that user tagged in them;

d. All profile information; News Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the

groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications;

e. All other records of communications and messages made or received by the user, including all private messages, chat history, video calling history, and pending "Friend" requests;

f. All "check ins" and other location information;

g. All IP logs, including all records of the IP addresses that logged into the account;

h. All records of the account's usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked";

i. All information about the Facebook pages that the account is or was a "fan" of;

j. All past and present lists of friends created by the account;

k. All records of Facebook searches performed by the account;

l. All information about the user's access and use of Facebook Marketplace;

m. The types of service utilized by the user;

n. The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

o.  All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the account;

p.  All records pertaining to communications between Facebook and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken.

## II.  Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of 922(g) (felon in possession of a firearm), since March 1, 2017 for each user ID identified on Attachment A2, information pertaining to the following matters:

(a) The relevant offense conduct, any preparatory steps taken in furtherance of the scheme, communications between Robert Spencer and others related to the relevant offense conduct;

(b) Evidence indicating how and when the Facebook account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and to the Facebook account owner;

(c) Evidence indicating the Facebook account owner's state of mind as it relates to the crime under investigation;

(d) The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).

The identity of the person(s) who communicated with the user ID about matters relating to relevant offense conduct of the crime under investigation, including records that help reveal their whereabouts.